In the Matter of the Marriage of
OGBUOBIRI,
*Respondent,*
*and*
OGBUOBIRI,
*Appellant.*
(No. D76-08-11544, CA 11051)
600 P2d 502

Ira L. Gottlieb, Portland, argued the cause and filed the brief for appellant.

Joan O'Neill, Portland, argued the cause for respondent. With her on the brief was Black, Kendall, Tremaine, Boothe & Higgins, Portland.

Before Schwab, Chief Judge, and Lee, Gillette and Campbell, Judges.

GILLETTE, J.

**GILLETTE, J.**

This is a dissolution of marriage proceeding in which the parties are Nigerian nationals. Respondent husband appeals from portions of the decree allocating certain assets of the parties and awarding attorney's fees. Specifically, he challenges the inclusion in the marital estate of a home in Nigeria, the valuation of that home if it is to be included, the value placed on his interest in a limited partnership, and the award of $6000 in attorney's fees to the wife. We affirm in all respects save as to the house in Nigeria.

Testimony concerning the home in Nigeria was conflicting.

The wife testified on direct examination that her husband sent money to Nigeria and this was used to build a new home. This home was built by his brother Humphrey for them. It was built during the years they were married, the money coming from their joint account. She testified that during their marriage she turned over her money to her husband and that both before and during the marriage she gave him money to be used to be sent to his family in Nigeria.

Wife testified that this was a new home, separate from the two others in the family compound. Pictures of the old home were introduced and she indicated where in relation to that house the new one would be. She testified the house was a solid cement block building with four bedrooms and an artesian well. Apparently she saw this home when it was nearly completed on a trip they made to Nigeria in December, 1974.

She testified that she wanted the home to be awarded to her husband because, once the marriage was dissolved, she no longer has an interest in it. Her opinion was that title was in the name of the Ogbuobiri family and she as a member has ownership rights in that home.

On cross-examination the wife testified that she and her husband were not from the same village and thus there are some differences in custom. However, with respect to use of the house, it was her opinion that the custom is almost universal. She testified that, according to custom, an individual builds a house for his home and the one who pays for the house owns it. In her mind there seemed to be no such concept as title, yet at one point, she conceded title was actually in the family. In her opinion, if Humphrey (her husband's eldest brother) owned the home it would pass on his death to her husband, not to have legal title, but to possess in order to care for his brother's wives and children.

In support of her position the wife introduced the affidavit of Dr. Njoku, her brother. He is vice president for administration at a college in Mississippi and was unable to attend. He stated that he was born in Nigeria in the same cultural area as the husband and that they have business dealings together and discuss building matters. He stated that the husband built a new home and this, by Nigerian law and custom, is owned by him and his wife. He concluded that the home, which has modern facilities, water and electricity, is worth about $25,000-$30,000. The estimate was based on the current cost of cement in Nigeria. Dr. Njoku never saw the house himself but relied on the accounts of other members of his family.

The husband testified that he regularly sent money to his family in Nigeria. His best estimate was $1000 a year during their marriage for a total of $6000. He admitted that his wife turned over her money to him but maintained that she did so voluntarily and made no objection to his sending money to his family. He testified further that the money was not earmarked for anything special and did not go toward building a new house for him. The only direct contributions he made to the family home were appliances he brought there from the United States, a gas generator worth about $600, and payments of between $200 and $350

to have the house wired for electricity. He did state that he did not know if any money he sent went into the house his brother built.

The husband's description of just what was built is not entirely clear. It appears that there were two existing buildings in the family complex which his brother renovated and remodeled and connected by a kind of corridor. Husband first saw this work in 1972, when he returned home for a visit after an absence of 14 years. It was then that he first found out about the new construction which was uncompleted at the time. He testified that this building contained three rooms, one used for a kitchen, one for a bathroom and an extra one. It was connected to the other two structures (each containing three bedrooms) by a corridor. Apparently these three buildings make up the family home, which is in a compound. The generator was purchased to service the entire compound.

The husband testified that he did not own a home in Nigeria. He claimed that title to the house belonged to his eldest brother, who is head of the family. Husband stated that, should his brother die, the brother's eldest son would inherit the property, not husband. According to tradition, he testified, husband as a brother has the right to stay in the home whenever he is in Nigeria.

In husband's view, the eldest brother as trustee of the family owns the land and buildings within the compound. If husband desired to build a home, his brother, according to local traditions, would be required to give him the necessary amount of land.

The husband introduced a witness in his support. She testified that she was from Nigeria and that her family lives close to the Ogbuobiri family. She testified that the husband did not own a home in Nigeria. The family home is owned by Humphrey, the husband's eldest brother, who inherited it when their father died. She testified that Humphrey renovated the two existing buildings and began, but did not

[359]

complete, three new rooms to each. In her view of custom, in the event of Humphrey's death, his eldest son would inherit the home and not husband.

The husband also introduced by document the testimony of a Dr. Oyeka, a cousin who lived close to his home in Nigeria. Dr. Oyeka (who submitted a handwritten sheet which was not notarized) stated that the respondent did not own a home in Nigeria, that his brother as the oldest son became owner by way of inheritance when their father died, and that the brother renovated the home and tried to add three new rooms, which are yet uncompleted. The only contribution made by the respondent, he reported, was a generator.

The trial court included the Nigerian home in the marital property, awarding it to the husband.

On *de novo* review, we are not persuaded by the evidence presented that the house did, in fact, belong to husband. The question remains as to what form a revised decree should take. Striking the Nigerian house from the decree leaves a disparity of approxiately $27,000 in value between assets awarded to husband and those awarded to wife. To balance matters, approximately $13,500 must be deducted from the wife's allotted property and added to husband's. There are several ways in which this could be done. All, however, involve redistributing assets which the trial court carefully apportioned. We think we cause the least disturbance to the property allocation as a whole if we make the following two adjustments:

1. The provision in the decree for an $8,321 judgment against husband is deleted.

2. Husband is awarded judgment against wife in the sum of $5,000.

As already noted, the provision in the decree awarding the Nigerian house to husband is deleted. In all other respects, the decree is affirmed.

Affirmed as modified. No costs to either party.